FILED
2013 Feb-28  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY AGEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  7:12-CV-4014-SLB** |
| | ) | |
| **M E R C E D E S - B E N Z   U . S .** | ) | |
| **INTERNATIONAL,  INC.;  CAROL** | ) | |
| **DAVIS; JEFF BURBANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently before the court on defendants' Motion to Dismiss, or, in the alternative, Motion for a More Definite Statement.  (Doc. 6.)[1]  Plaintiff, Kimberly Agee, has sued her former employer, defendant Mercedes-Benz U.S. International, Inc., and co-employees, Carol Davis and Jeff Burbank, alleging that defendants discriminated against her on the basis of her disability and her pregnancy and that they retaliated against her for engaging in protected activity in violation of federal law.   Plaintiff also alleges state-law causes of action for outrage and for negligent hiring, training, and supervision.   Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 6), is due

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

to be granted; their Motion for a More Definite Statement, (doc. 6), is due to be denied as moot.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendants have moved to dismiss plaintiff's Complaint against the individual defendants and Counts IV through VI against defendant Mercedes-Benz for failure to state a claim upon which relief can be granted.  The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's statement of a claim for relief.  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997).  When addressing a 12(b)(6) motion to dismiss, the court accepts the allegations in the Complaint as true and construes those allegations in the light most favorable to plaintiff.  *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)(quoting *Am. Dental Ass'n*, 605 F.3d at 1288).  To survive a Motion to Dismiss, "the complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Id.* (quoting *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)))(internal quotations omitted).  A claim is "plausible" if the facts are sufficient "to allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))(internal quotations

2

omitted).  Also, the court does not assume that plaintiff can prove facts she has not alleged or that defendant has violated the law in ways that have not been alleged.  *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)(internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted).  And, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'"  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))(internal quotations omitted).  Also, the court does not assume that plaintiff can prove

facts she has not alleged or that defendant has violated the law in ways that have not been alleged. *Id*. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

## II. <u>STATEMENT OF FACTS</u>

The following facts are set forth in plaintiff's Complaint:

9.   On or around April 18, 2005, the Plaintiff was hired for employment at Mercedes Benz.

10[.]  In 2008, the Plaintiff filed an EEOC charge.

11[.]  However, after she filed her charge of discrimination, she became very ill, and developed a disability as defined in the American with Disabilities Act.

12.   After developing her disability, the Plaintiff endured numerous medical procedures, including invasive procedures, which had a lasting effect on her daily life.

13.   The Plaintiff took disability and was off from work from March 2009 to June  2010.

14.   When the Plaintiff returned back to work in June 2010, she was moved from Assembly and placed in a less desirable position in Body Shop.[2]

---

[2]Discrimination and retaliation occurring before April 1, 2012, would appear to be beyond the scope of plaintiff's EEOC charge.  (*See* doc. 1-1 at 1.)  In her EEOC charge plaintiff alleges the earliest date discrimination took place was April 1, 2012.  (*Id.*)  In the particulars section of her charge, she alleges:

In 2009, I developed a disability as defined in the Americans with Disabilities Act.  I subsequently endured numerous medical procedures, including invasive surgeries, which continue to have lasting effects on my daily life.  On April 26, 2012, I learned I was pregnant.  I immediately informed Carol Davis, who is the point of contact for employees with medical issues.  I provided her with my

15.  The position in Body Shop was less desirable because it required the employees to engage in very difficult physical labor including, but not limited to, lifting heavy body parts such as doors, hoods, lift gates, and other parts without "lift assist".

16.  In Assembly the parts varied in size, were smaller, and the employees had access to "lift assist".

17.  The schedule in Assembly was 40 hours per week.

18.  The Plaintiff was told there was no position in Assembly upon her return[;] however, just two weeks later, Mercedes hired over 100 temps in Assembly.

19.  Since that time, Mercedes has hired more than 500 workers in Assembly so clearly positions have become available.

20.  The Plaintiff complained about being positioned in Body Shop and the physical limitations she had after the surgery, but her complaints were ignored.

21.  At first, in Body Shop, there were 28 employees on the line, and these employees (not the Plaintiff's supervisors) helped the Plaintiff and accommodated her physical limitations.

---

most recent doctor's restrictions, stating that I could not work more than 40 hours per week.  Ms. Davis later rejected my doctor's note, saying that it did not provide enough information, which I dispute – the note was perfectly clear. Nevertheless, my doctor provided additional information, as requested.  Ms. Davis again rejected the note, saying that it was "not good enough."  Out of duress and fear of losing my job, I provided Ms. Davis with specific disability-related medical information that I, otherwise, would never have given her.  She instructed me to inform my doctor that my job required overtime hours.  On May 3, 2012, I was placed on unpaid medical leave.  HR/Safety Manager Jeff Burbank[ ] said that I would be fired if my doctor did not lift my restrictions.

(*Id.*)

22.   By January 2012, cutbacks caused the line to decrease to 9 employees, yet the work on the line remained the same.

23.  There were not enough employees on the line to assist the plaintiff and accommodate her for her physical limitations.

24.  The Plaintiff complained of this problem.

25.  On or around March 21, 2012, the Plaintiff injured her back on the job due to the increase in work and strenuous work conditions.

26.  The Plaintiff's group leader did not approve of her going to the medical department.

27.  The Plaintiff was given an ice pack and told to get back to work.

28.  Other workers who hurt their back, who had not filed prior EEOC charges, and had not complained about being retaliated against were given medical assistance, lighter duties, and sent to a warehouse where overtime was not required.

29.  On or about April 21, 2012, the Plaintiff's shoulder began to bother her at work from the heavy lifting and strenuous conditions.

30.  The Plaintiff's doctor restricted her not to 15 pounds or less based on her weakened condition due to all of the prior surgeries and risks associated with heavy lifting after the surgeries causing problems to her back and shoulder.

31.  The Plaintiff was accommodated for approximately two weeks, then Mercedes decided to move the Plaintiff to another line that involved substantial overtime.

32.  On April 26, 2012, the Plaintiff received another [r]estriction limiting the work week to forty (40) hours.

33.  Carol Davis, in Human Resources, told the Plaintiff the excuses did not contain enough information (but did not tell her what information was missing), and to go back to her doctor and explain the job description required overtime and heavy lifting.

6

34.   On April 30, 2012, the Plaintiff went to her doctor and to her gynecologist, and they both sent two more restrictions stating no overtime or heavy lifting due to the fact she was pregnant and because of her prior surgeries.

35.   Mercedes refused to comply or attempt to comply with the accommodation requests claiming there was not enough information on the doctors excuses.

36.   Other employees are given accommodations for years and are able to work in the warehouse until their restrictions are lifted.

37.   There was no undue hardship on Mercedes due to the fact that there were plenty of 40 hour work shift positions available.

38.   On May 2, 2012, the Plaintiff was told she was fired if she did not go to her doctor and get the restrictions lifted, and she was sent home.

39.   After the Plaintiff was terminated on May 2, 2012, Mercedes realized its mistake and attempted to force the Plaintiff to use her Family Medical Leave Act ("FMLA") time for the time that had lapsed since they fired her.

40.   In their letters to the Plaintiff, Mercedes tells the Plaintiff that she should fill out her FMLA papers or she will be terminated again.

41.   The Plaintiff responded that she was not requesting FMLA , that she could work with accommodations, and was seeking an accommodation for her disability.

(Doc. 1 ¶¶ 8-41.)

Plaintiff's Complaint does not allege any specific acts of defendant Jeff Burbank.

However, in her EEOC charge, she identifies Burbank as the Mercedes-Benz employee that

sent her home on May 2, 2012.  (*See* doc. 1-1 at 1.)  She does not identify the Mercedes-Benz

employee or employees responsible for failing to accommodate her in the Body Shop before April 26, 2012.

On May 8, 2012, plaintiff filed an EEOC charge against Mercedes-Benz, complaining of sex and disability discrimination.  (Doc. 1-1 at 1.)  The EEOC issued her a right-to-sue letter, (*id*. at 2), and she filed the instant action against Mercedes-Benz, Carol Davis, and Jeff Burbank, (doc. 1).  In her Complaint, she alleges the following causes of action:

Count I – Pregnancy Discrimination – Disparate Treatment;

Count II – Disability Discrimination;

Count III – Retaliation;

Count IV – Negligent Hiring, Training and Supervision;[3]

Count V – Outrage; and

Count VI – Respondeat Superior.

Defendants have moved to dismiss Counts IV through VI, the state-law claims, against all defendants and Counts I through III, the federal claims, against the individual defendants Davis and Burbank.  (*See generally* doc. 6.)

---

[3]In her Complaint plaintiff alleges, "The defendant company, the defendant, Burbanks [sic], and defendant, Davis, by and through its agents, maliciously, deliberately, wantonly, and/or negligently failed to terminate, monitor and/or train its employees."  (Doc. 1 ¶ 65.) Therefore, the court finds that plaintiff's Complaint is not limited to negligent failure to train, supervise, and/or hire.

## III.  DISCUSSION

### A.  COUNTS I, II, AND III – INDIVIDUAL DEFENDANTS

In her Complaint, plaintiff asserts federal discrimination and retaliation claims.  (Doc. 1 at 6 ["Count I – Pregnancy Discrimination – Disparate Treatment"]; 8 []"Count II. Disability Discrimination"]; and 10 ["Count III – Retaliation"].   Defendants contend, "Counts I, II, and III will not lie against Davis and Burbank because they are individuals and were not Plaintiff's employer."  (Doc. 6 ¶ 6 [citing *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006)].)  "The Plaintiff agrees the first three counts, 1) Pregnancy Discrimination – Disparate Treatment, 2) Disability Discrimination, and 3) Retaliation, are not alleged against the individual defendants, Davis and Burbank, but are specifically against the company, [Mercedes-Benz]." (Doc. 11 at 3-4.)

To the extent plaintiff's Complaint can be read to state claims against the individual defendants for discrimination and/or retaliation in violation of federal law, such claims are due to be dismissed.  Therefore, defendants' Motion to Dismiss Counts I, II, and III, against the individual defendants will be granted and those claims will be dismissed.

### B.  COUNT V – OUTRAGE

Plaintiff's Complaint alleges:

> The Defendants intentionally or recklessly engaged in extreme and outrageous conduct that transcends all bounds of decency, thus causing the Plaintiff to suffer severe emotional distress in that they allowed the Plaintiff's supervisor to continue to retaliate against the plaintiff in her weakened

condition, require[d] her to lift over her doctor[']s restrictions, require[d] her to work past 40 hours against her doctor's restrictions, threaten[ed] and intimidate[d] her by not having her doctor lift her restrictions, [and] terminate[d] her for requesting accommodations in accordance with her doctor's restrictions.

(Doc. 1 ¶ 72.)   Defendant contends that plaintiff's outrage claim is due to be dismissed because the alleged conduct does not "rise[ ] to the level of extreme and outrageous conduct."  (Doc. 6 ¶ 15 [citing *Little v. Robinson*, 72 So.3d 1168, 1172 (Ala. 2011)(quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)); *Shepherd v. Summit Mgmt. Co.*, 726 So. 2d 686, 694 (Ala. Civ. App. 1998); *Thompson v. City of Muscle Shoals*, No. 3:12-CV-01686-CLS, 2012 WL 4815466, at *10 (N.D. Ala. Oct. 10, 2012); *Howze v. Jefferson County Comm. for Econ. Opportunity*, No. 2:11-CV-52-VEH, 2012 WL 3775871, at *9 (N.D. Ala. Aug. 28, 2012); *Estate of Reed v. Ponder Enters., Inc.*, No. 1:11-CV-554-CSC, 2012 WL 1031487, at *8 (M.D. Ala. Mar. 27, 2012); *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1317, 1319 (N.D. Ala. 2002)].)  Plaintiff contends that the issue of whether her allegations rise to the level of outrage is "better developed and argued after discovery is complete and at the Summary Judgment stage of litigation."  (Doc. 11 at 10.)  She contends the facts alleged in her complaint are sufficient to survive defendants' Motion to Dismiss. (*Id.*)

This court has held:

In order to establish a claim for the tort of outrage, a plaintiff must prove:

(1) that the defendant's conduct was intentional or reckless;

10

> (2) that it was extreme and outrageous; and
>
> (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it.
>
> *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997)(citing *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).  As to the second element under such a claim, the Alabama Supreme Court has repeatedly made clear that the tort of outrage is reserved for only the most extreme conduct: "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv.*, 394 So. 2d at 365 (citations omitted).  Further, the Alabama Supreme Court has acknowledged that the cases in which there has been sufficient evidence to create a jury question under such a claim fit into three categories:  those involving "wrongful conduct in the context of family burials," those in which "insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim," and those "involving egregious sexual harassment."  *Crawford*, 693 So. 2d at 460 n.1 (citing *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala.1993))(internal quotations and citations omitted).

*Chalal v. Northwest Med. Center, Inc.*, 147 F. Supp. 2d 1160, 1183-84 (N.D. Ala. 2000).  In order to state a claim for outrage based on termination, a plaintiff must show that the termination was "for a reason which contravenes public policy" or that it was "accompanied with the sound of fury."  *See Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1387 (Ala. 1986).

In her Complaint, plaintiff alleges that defendants did not accommodate her doctors' restrictions and that they terminated her because she did not "get the restrictions lifted" and/or take FMLA leave.  The court notes that Alabama law "does not require an employer to create a job or to provide special accommodations."  *See Bleier v. Wellington Sears Co.*,

757 So. 2d 1163, 1172 (Ala. 2000)(discussing the Alabama retaliatory discharge statute). Also, the Alabama Supreme Court has refused to adopt a "public policy" exception to the employment at will doctrine based on gender discrimination.  *See Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 313 (Ala. 1992).  Therefore, the court finds that a mere violation of either the ADA or Title VII does not establish a public policy exception to the employment at will doctrine.

Moreover, none of the allegations in plaintiff's Complaint support an inference that plaintiff was subjected to the "sound of fury"[4] or atrocious conduct.  "Fury" implies conduct that is violent or full of rage. *See Fury* at http://www.merriam-webster.com/dictionary/fury. "Atrocious" conduct is conduct that is " extremely wicked, brutal, or cruel," "horrifying," and/or "abominable."  *See Atrocious* at http://www.merriam-webster.com/dictionary/ atrocious.  Plaintiff contends that defendants failed to accommodate her limitations and questioned her doctor's restrictions.  She does not contend that defendants' conduct was wicked or violent or otherwise qualified as the sound of fury or atrocious.  Plaintiff's allegations are not "so outrageous in character and so extreme in degree as to go beyond all

---

[4]The Alabama Supreme Court uses the phrase "sound of fury."  However, a better known phrase is "sound and fury," which "refer[s] to a great uproar and passionate exclaim that ultimately means nothing," and it comes from a line in *Macbeth* that describes life as "a tale told by an idiot, full of sound and fury, signifying nothing."  *See* http://wiki.answers.com/Q/What_does_sound_and_fury_mean (quoting *Macbeth*, Act 5, Scene 5.)

possible bounds of decency, [such as] to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv.*, 394 So. 2d at 365.

Therefore, the court finds that Count V of plaintiff's Complaint, alleging outrage, is due to be dismissed.

## C.  COUNT IV – NEGLIGENT HIRING, TRAINING AND SUPERVISION

### 1. **Individual Defendants**

Defendants contend, "[N]owhere is it alleged that Davis and Burbank are Plaintiff's employer.  Nowhere is it alleged that Davis and Burbank employed 'agents' to act on their behalf.  Quite simply, Davis and Burbank are not Plaintiff's employer and there is no allegation to the contrary.  For this reason alone, Plaintiff does not state a claim against Davis and Burbank in Count IV."  (Doc. 6 ¶ 8.)  In response, plaintiff concedes that "the Motion to Dismiss [her] negligent hiring, training and supervision [claim] is due to granted with regard to those individual defendants."  (Doc. 11 at 11.)

"Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship.  . . .  A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001).  Therefore, without opposition, defendants' Motion to Dismiss Count IV of plaintiff's Complaint, alleging malicious, deliberate, wanton, and/or negligent failure to terminate,

monitor and/or train, is due to be granted and such claim dismissed against defendants
Burbank and Davis.

### 2. Mercedes-Benz

In her Complaint, plaintiff alleges, "The defendant company . . . maliciously,
deliberately, wantonly, and/or negligently failed to terminate, monitor, and/or train its
employees." (Doc. 1 ¶ 65.)  Also, she states:

> 67.  The defendants had a duty to abide by the laws of the United States
> under the Civil Rights Act and the ADA and attempt to accommodate the
> Plaintiff during her pregnancy and disability, to refrain from terminating the
> Plaintiff upon receipt of a request for accommodation, to refrain from
> threatening and intimidating the Plaintiff into getting her doctor to lift the
> necessary medical restrictions.

> 68.  The defendant[s] had a duty to provide a safe environment for the
> Plaintiff to complete her work which includ[ed] accommodating her doctor's
> restrictions for continued employment at Mercedes Benz.

> 69.  The defendants failed to accommodate the plaintiff and instead
> terminated the Plaintiff in direct contradiction to the ADA and the Civil Rights
> Act.

> 70.  As a proximate cause and cause-in-fact, to the defendants'
> negligent hiring, training, and supervision of its employees, the plaintiff was
> caused to suffer the loss of her job, and to be injured and damaged: to have to
> seek other employment, to have her career significantly impacted; to forgo
> compensation and benefits; and to endure mental anguish, emotional distress,
> humiliation, and shame.

(*Id*. ¶¶ 67-70.)

Defendants argue that plaintiff's Complaint fails to state a claim for negligent and/or
wanton hiring, retention, training, and supervision because it "does not allege that any

14

employee was incompetent or that, exercising reasonable care, any of the Defendants would have known of that incompetence.  Similarly, Plaintiff's Complaint does not allege that any employee committed a 'wrongful act' within the scope of his or her employment."  (Doc. 6 ¶ 10.)  They contend that plaintiff's Complaint is insufficient because it does not name the incompetent employee or describe the wrongful acts attributable to that employee.  (*Id.* ¶ 11.) Therefore, "it is impossible for Defendants to respond to any alleged claims of incompetence, much less whether Defendants knew or reasonably should have known of that incompetence, whether that employee's incompetence led him or her to commit a wrongful act, or whether any of the allegedly wrongful acts were committed within the scope of that employment." (*Id.* ¶ 12.)

Plaintiff responds that she "has articulated sufficient facts to support her claims." (Doc. 11 at 12.)  She states:

> Throughout the Complaint and the attached Exhibit, the Plaintiff describes actions taken by Davis and Burbank, employees of [Mercedes-Benz], that rise to the level of outrageous conduct, discriminatory conduct and retaliation which are in violation of the ADA and Title VII.  It can be reasonably inferred from the allegations of the Complaint that these employees are clearly incompetent due to their flagrant refusal to abide by the laws of the State of Alabama, and by the laws propounded in the ADA and Title VII, by failing to accommodate the Plaintiff with a simple accommodation of 40 hours and no heavy lifting when there were hundreds of positions with those qualifications filled after her requests, by forcing her to provide additional details of her prior medical condition which is highly private to her, by trying to force her to settle her claims, trying to force her to have her doctors lift the restrictions after she had been fired, and by firing her a second time.

15

> Again, the Plaintiff is not required to plead every element of the claim. The language of the complaint clearly places the defendant on notice of what the claim is about.

(Doc. 11 at 12-13.)

To state a claim for negligent/wanton/intentional hiring, training, supervision, and/or retention, plaintiff must allege that Mercedes-Benz had "notice or knowledge, either actual or presumed, of [his employee's] unfitness." *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993)(quoting *Lane v. Central Bank of Alabama, N.A.*, 425 So. 2d 1098, 1100 (Ala.1983)(quoting *Thompson v. Havard*, 235 So. 2d 853 (Ala. 1970)).

> Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence[, wantonness or intentional conduct] to show [the employer's knowledge or notice of the employee's incompetence] by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

*Id*.

"[I]mplicit in the tort of negligent[, wanton, or intentional] hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that ***caused*** the injury to the

16

plaintiff." *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010)(quoting *Humana Med. Corp. of Alabama v. Traffanstedt*, 597 So. 2d 667, 669 (Ala.1992))(emphasis in *Jones Express*).   Indeed, [t]o support a claim of negligent supervision, the plaintiff must demonstrate that . . . the employee committed a tort recognized under Alabama law." *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)(citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999)); *see also Andazola v. Logan's Roadhouse Inc.*, 871 F. Supp. 2d 1186, 1225 (N.D. Ala. 2012) ("However, not just any 'incompetency' suffices to give rise to a cause of action for so-called 'negligent hiring, training, retention, and supervision liability.'   Rather, there must be an underlying common law tort recognized by Alabama courts:  that is, in order to prevail, the plaintiff must prove that the allegedly incompetent employee committed a tortious act." (citing *Stevenson*, 762 So. 2d at 824)).

Allegations that Mercedes-Benz employees violated Title VII and/or the ADA by failing to accommodate plaintiff and terminating her based on her pregnancy and/or disability do not support a common-law tort in Alabama.  Also, as set forth above, Alabama does not recognize a public policy exception to the employment at will doctrine based on gender discrimination and/or accommodation of a disability.  Therefore, the court finds that these alleged wrongs will not support a claim for negligent/wanton hiring, retention, training, or supervision.

Even if the court were to find that the employees responsible for not accommodating plaintiff's disability and/or pregnancy work limitations and her termination had committed an Alabama common-law tort, plaintiff has not alleged that Mercedes-Benz knew or should have known these employees were incompetent.  As stated above, proof necessary to maintain a claim of negligent and/or wanton hiring, supervision, training, and retention requires proof of the employer's knowledge or notice that the employee is incompetent. "This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice." *Big B*, 634 So. 2d at 1003.  Therefore, in order to establish that the employee is incompetent, a plaintiff must allege prior similar acts of wrongdoing sufficient to establish that the employer knew or should have known that its employee, due to his incompetency, was prone to such wrongdoing.

> [A] conclusory allegation of negligent hiring, training or supervision — without any accompanying facts that there was a pattern of abuse or that [Mercedes-Benz] was otherwise on notice of propensities of its employees to engage in tortious behavior toward [others] . . . , much less that [Mercedes-Benz] failed to take corrective action — is [not] sufficient to buoy such a claim through the pleadings stage.  Courts routinely require more, even on Rule 12(b)(6) review, and dismiss such claims where the plaintiff has failed to allege a sufficient factual predicate.

*Rogers v. Hartford Life and Acc. Ins. Co.*, Civil Action No. 12-0019-WS-B, 2012 WL 887482, *5 (S.D. Ala. Mar. 15, 2012)(citing *Lawrence v. Christian Mission Center Inc.*, 780 F. Supp. 2d 1209 (M.D. Ala. 2011); *Mac v. Brooks*, Civil Action No. 3:11cv313-WHA, 2011

18

WL 3794683, *3 (M.D. Ala. Aug. 25, 2011); *Cooper v. City of Starke*, No. 3:10-cv-280-J-

34MCR, 2011 WL 1100142, *8 (M.D. Fla. Mar. 23, 2011); *Sparks v. Phillips & Cohen*

*Associates, Ltd.*, 641 F. Supp. 2d 1234, 1254 (S.D. Ala. 2008)).

Because plaintiff's Complaint does not allege sufficient facts to establish that she was

injured by an incompetent employee, committing a common-law Alabama tort, and that,

because of a pattern of prior tortious conduct or notice of a propensity to engage in tortious

conduct, Mercedes-Benz knew or should have known that its employee was incompetent, her

Complaint does not state a claim for relief based on negligent, wanton and/or intentional

hiring, training, and/or supervision.   Therefore, defendants' Motion to Dismiss will be

granted and Count IV of plaintiff's Complaint against Mercedes-Benz will be dismissed.

## D.  COUNT VI – RESPONDEAT SUPERIOR

Plaintiff's Complaint alleges that "Defendant ratified the behavior of all of its

employees by failing to remedy the situation, failing to reprimand them, and causing damage

to the Plaintiff by retaliation and termination of the Plaintiff."  (Doc. 1 ¶ 75.)  Defendants

move to dismiss this claim on the ground that respondeat superior is not a separate cause of

action, but "it is a theory of liability whereby a principal can be held vicariously liable for a

tort committed by its agent."[5]  (Doc. 6 ¶ 17.)  Plaintiff responds that she "agrees the count

---

[5]Defendants also contend that plaintiff's Complaint is unclear as to whether this claim
is asserted against one or all of the defendants.  As set forth above, the individual defendants
are not "principals" for purposes of establishing vicarious liability.

is not a separate count," but, she contends the "theory of liability [against Mercedes-Benz] must not be dismissed."  (Doc. 11 at 13.)

To the extent Count VI is asserted as a separate claim, it is due to be dismissed. Therefore, defendants' Motion to Dismiss is granted and Count VI will be dismissed.  To the extent plaintiff contends that Mercedes-Benz is vicariously liable for the discriminatory and/or retaliatory conduct of its employees, this theory of liability is presumed by virtue of her Title VII and ADA claims.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 832 (11th Cir. 2007); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

## E.  MOTION FOR A MORE DEFINITE STATEMENT

Because the court finds that defendants' Motion to Dismiss is due to be granted, its alternative Motion for a More Definite Statement will be denied as moot.

### <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that plaintiff's Complaint fails to state a claim for relief against the individual defendants, Carol Davis and Jeff Burbank, and against defendant Mercedes-Benz for Counts IV through VI.    An Order granting defendants' Motion to Dismiss and denying as moot their Motion for a More Definite Statement will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 28th day of February, 2013.

Sharon Lovelace Blackburn
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE