FILED
2015 Mar-27  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | |
|---|---|
| **KIMBERLY AGEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.  7:12-CV-4014-SLB** |
| ) | |
| **MERCEDES-BENZ U.S.** ) | |
| **INTERNATIONAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on Defendant's Motion for

Summary Judgment, (doc. 18),[1] Defendant's Motion to Strike Portions of Plaintiff's Brief

in Opposition to Motion for Summary Judgment, (doc. 25), and Plaintiff's Motion for

Withdrawal or Amendment of Admission Pursuant to Rule 36(b), (doc. 28).  Plaintiff,

Kimberly Agee ("Plaintiff"), has sued her former employer, Defendant Mercedes-Benz

U.S. International, Inc., ("MBUSI" or "Defendant") alleging that MBUSI discriminated

against her because of her pregnancy and her disability and retaliated against her in

violation of Title VII. Upon consideration of the record, the submission of the parties, the

arguments of counsel, and the relevant law, the court is of the opinion that Defendant's

Motion to Strike, (doc. 25), is due to be granted in part and denied in part as moot,

---

[1]Reference to a document number ("Doc. ___") refers to the number assigned to each
document as it is filed in the court's record.

1

Defendant's Motion for Summary Judgment, (doc. 18), is due to be granted, and

Plaintiff's Motion for Withdrawal, (doc. 28), is terminated as moot.[2]

## STATEMENT OF THE CASE

In Count I of her Complaint, Plaintiff alleges she was discharged by MBUSI

because of her pregnancy. In Count II of her Complaint, Plaintiff alleges she had a

disability that was not accommodated and her employment with MBUSI was terminated

as a result. In Count III of her Complaint, Plaintiff alleges MBUSI retaliated against her

in violation of Title VII. The parties were provided a discovery period and after discovery

was completed MBUSI filed its Motion for Summary Judgment. (Doc. 18). Defendant

also filed a Motion to Strike, (doc. 25), and Plaintiff filed her Motion for Withdrawal.

(Doc. 28).

---

[2]At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant.  The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff.  Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997).  This is an important opinion and the court had reached a firm decision as to the appropriate outcome before requesting a proposed opinion from defendant's counsel.  In this case, however, the defendant drafted the opinion according to the express instructions of the court as to its contents.  These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument.   Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion and the opinion reflects the court's own conclusions.

2

## MOTION TO STRIKE

There are two parts to MBUSI's Motion to Strike. (Doc. 25). First, MBUSI seeks to strike certain "evidence" and any arguments based thereon referenced in Plaintiff's Brief in Opposition to MBUSI's Summary Judgment Motion. (Doc. 23). This "evidence" includes the following "additional undisputed facts" proposed by Plaintiff in her Brief in Opposition to MBUSI's Motion for Summary Judgment:

165. The only other female on the line, Diana Walker, hurt her back and was accommodated to light lifting by working the 60 and 70 stations where there was no overtime until the line was shut down in July. (Plt. Dep. p. 197, 201).

. . .

168. Jeremy Brown, who also worked on the same line, when he was injured, was accommodated by being sent to the warehouse where there was no overtime. (Plt. Dep. p. 197).

169. Sandy Pate has a work hour restriction and she was accommodated. (Plt. Dep. p. 215, 249).

170. Fernandez who had rotator cuff surgery, was placed in the warehouse for two months. (Plt. Dep., p. 199)….

171. Rachel Rutherford was accommodated being sent to the warehouse. (Plt. Dep. p. 204).

172. Other team members had been to the warehouse for a year. (Plt. Dep. p. 198).

173. There were jobs in the plant that did not require more than 40

3

hours. (Plt. Dep. p. 243).

(Doc. 23 at 22-23).

Second, MBUSI asserts that Plaintiff cannot deny MBUSI's Second Request for Admission #1 because she did not respond to that request and it must therefore, be deemed admitted. MBUSI then argues that Plaintiff cannot present any facts or argument inconsistent with the deemed admission. MBUSI's Second Request for Admission #1 addresses whether Plaintiff refused to submit to MBUSI a HIPAA authorization form from May 1, 2012 to July 9, 2013. (Doc. 25-1 at 2-5). This fact is immaterial to the court's Opinion herein. However, the court has granted previously plaintiff's Motion to Amend as requested by plaintiff's counsel.

The court now addresses the first part of MBUSI's Motion to Strike, (doc. 25). MBUSI asserts that a review of the relevant deposition testimony cited by Plaintiff to support her proposed undisputed facts noted above, shows that Plaintiff lacked personal knowledge of this "evidence" and that this "evidence" constituted inadmissible hearsay.

"'A district court has broad discretion in determining the admissibility of evidence' on a motion for summary judgment." *Rhodes v. Tuscaloosa Cnty. Bd. Of Educ.,* 935 F. Supp. 2d 1226, 1232 (N.D. Ala. 2013) (quoting *Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013)). "In determining whether evidence is otherwise admissible, the court applies the same rules and standards as it would at trial." *Rhodes*, 935 F. Supp. 2d at 1232. Indeed, in order to be admissible for purposes of summary

4

judgment, deposition testimony, as well as affidavits or declarations, must be based upon personal knowledge. *See Jernigan v. Dollar Gen. Corp*., No. 2:11-cv-01448-WMA, 2013 WL 452820, at *8 (N.D. Ala. Jan. 31, 2013) (citing FED. R. CIV. P. 56(c)(4)). If a person's "testimony does not meet this standard ... the court will not consider it." *Jernigan*, 2013 WL 452820, at *8. "Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (citation omitted); see also *Jernigan*, 2013 WL 452820, at *8. "'[M]ere conclusions and unsupported factual allegations, as well as affidavits, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment.'" *Rhodes*, 935 F. Supp. 2d at 1237 (quoting *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) (citing *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002)). Furthermore, "word-of-mouth" statements by other employees are unsworn statements, and "[t]he court does not consider unsworn statements." Rhodes, 935 F. Supp. 2d at 1233 (citing *Dudley v. City of Monroeville, Ala*., 446 F. App'x 204, 207 (11th Cir. 2011)).

Hearsay is an out-of-court statement made by someone other than the declarant, offered in evidence to prove the truth of the matter asserted. FED. R. EVID. 801(C). Hearsay evidence is presumptively inadmissible at trial. See FED. R. EVID.803. And "'[t]he general rule is that inadmissible hearsay cannot be considered on a motion for

summary judgment.'" *Rhodes*, 935 F. Supp. 2d at 1232 (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322-25 (11th Cir. 1999)).

MBUSI has moved to strike "certain 'evidence' which [Agee] contends establishes various employees are comparators, [that these employees] were treated differently than [Agee] was, and [that these employees] were provided accommodations [MBUSI did] not offer[ ] to her."  (Doc. 25 at 1-2.)  It moves to strike the following:

> 165.  The only other female on the line, Diana Walker, hurt her back and was accommodated to light lifting by working the 60 and 70 stations where there was no overtime until the line was shut down in July.  (Plt. Dep. p. 197, 201).
>
>       . . .
>
> 168.  Jeremy Brown, who also worked on the same line, when he was injured, was accommodated by being sent to the warehouse where there was no overtime.  (Plt. Dep. p. 197).
>
> 169. Sandy Pate has a work hour restriction and she was accommodated. (Plt. Dep. p. 215, 249).
>
> 170. Fernandez who had rotator cuff surgery, was placed in the warehouse for two months. (Plt. Dep., p. 199).
>
> 171.  Rachel Rutherford was accommodated be being sent to the warehouse. (Plt. Dep. p. 204).

172. Other team members had been to the warehouse for a year.  (Plt. Dep. p. 198).

173. There were jobs in the plant that did not require more than 40 hours. (Plt. Dep. p. 243).

(Plt. Br. at pp. 17-18).

Plaintiff admitted that she did not know the underlying physical or mental impairments suffered by the individuals who were working at the warehouse nor did she know their restrictions. (Doc. 20-1 at 53). Plaintiff's own deposition testimony shows that she either had no personal knowledge of the above-referenced "evidence" or that she was simply repeating statements she had heard from co-workers which is inadmissible hearsay. See *Rhodes*, 935 F. Supp. 2d at 1237 ("'[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief rather than personal knowledge, are insufficient to withstand a motion for summary judgment.'") (quoting *Ellis*, 432 F.3d at 1327 ); see also *Macuba*, 193 F.3d at 1322-25 (inadmissible hearsay is not considered for summary judgment purposes). As a result, the first part of Defendant's Motion to Strike (Doc. 25) is due to be granted.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). Once the moving party has met its burden, the non-moving party must go beyond

the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v.

Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support
> the assertion by:
>
> > (A) citing to particular parts of materials in the record, including
> > depositions, documents, electronically stored information, affidavits
> > or declarations, stipulations (including those made for purposes of
> > the motion only), admissions, interrogatory answers, or other
> > materials; or
> >
> > (B) showing that the materials cited do not establish the absence or
> > presence of a genuine dispute, or that an adverse party cannot
> > produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to

state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh

the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson*, 477 U.S. at 249. "[C]ourts are required to view the

facts and draw reasonable inferences 'in the light most favorable to the party opposing the

[summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## STATEMENT OF FACTS[3]

Plaintiff began employment with MBUSI in April 2005 as a Team Member in the Assembly Department. (Doc. 20-1 at 7, 11). In 2008, Plaintiff complained about  alleged sexual harassment in her area in the Assembly Department; she subsequently filed an EEOC Charge about the alleged harassment; and in 2009, she received a Notice of Right to Sue regarding her EEOC Charge. (Doc. 20-1 at 13-14). Plaintiff was off work from March 2009 through June 2010 due to treatment for breast cancer. (Doc. 20-1 at 11-12). In June 2010, Plaintiff began working in the MBUSI Body Shop on Line 3.2. (Doc. 20-1 at 13-14).

---

[3]The Statement of Facts is drawn from the evidence viewed in the light most favorable to the Plaintiff, the non-moving party, and all justifiable inferences have been drawn in her favor.

In March 2012, Plaintiff, while working on the 3.2 Line, complained that she hurt her back. (Doc. 20-1 at 15). Her Group Leader took Plaintiff to MBUSI's Medical Department where she was given an ice pack, some pain pills and then she returned to work on the Line. (Doc. 20-1 at 15). The next day, Plaintiff met with an Assistant Manager, Vann Robinson, and complained to Mr. Robinson that she had not received the proper Team Member and Team Leader support the prior day after she complained of hurting her back. (Doc. 20-1 at 15).

On April 11, 2012, Plaintiff went to see her personal physician, Dr. Maddux,  and complained that her arm was hurting her. (Doc. 20-1 at 21). Dr. Maddux works at Breast Care Center of Birmingham, a Board Certified General Surgery Fellowship Trained Oncology practice. (Doc. 20-2 at 40). Dr. Maddux provided Plaintiff a note which included a medical restriction that Plaintiff should not lift more than fifteen pounds. (Doc. 20-2 at 40). Plaintiff faxed this note to the MBUSI Medical Department that same day because she was working nights. (Doc. 20-1 at 23; Doc. 20-3 at 2, 7, 13). That night, Plaintiff was instructed to work only Stations 60 and 70 on her Line. (Doc. 20-1 at 23; Doc. 20-3 at 2, 7; Doc. 20-5 at 2). Working only those two stations accommodated Plaintiff's fifteen pound lifting restriction. (Doc. 20-1 at 23; Doc. 20-5 at 2). Plaintiff continued working only those two stations for approximately two weeks. (Doc. 20-1 at 23).

MBUSI then determined that Plaintiff's fifteen pound lifting restriction could  be accommodated in the Body Shop's Z2 166 Area where Plaintiff could work a better rotation schedule. (Doc. 20-5 at 2-4).[4] Plaintiff then was moved to the Z2 166 Area. (Doc. 20-1 at 23; Doc. 20-4 at 6). The jobs that Plaintiff performed in the Z2 166 Area did not require her to lift over fifteen pounds and so her medical restriction was still accommodated. (Doc. 20-1 at 23).

In April 2012, Plaintiff learned she was pregnant. (Doc. 20-1 at 7). On April 26, 2012, Plaintiff went to her personal physician, Dr. Ross at OB-GYN South, P.C., and he supplied Plaintiff with a medical excuse dated April 26, 2012 which stated: "Kimberly [Plaintiff] is not to work more than 40 hours/week." (Doc. 20-1 at 25-26; Doc. 20-2 at 43).

It is an essential function of the job of a MBUSI Production Team Member to work a flexible work schedule, which may include working more than 40 hours per week. (Doc. 20-2 at 61-62; Doc. 20-4 at 9, 12; Doc. 20-6 at 7-8, 14).  MBUSI's policies reflect the necessity of a flexible work schedule:

- MBUSI's Production Team Member job description states in its essential functions that Production Team Members are "assigned work situations as production and other needs require." (Doc. 20-2 at 62).

---

[4]MBUSI's general practice is to assign its Production Team Members to work a different station on the production line every two hours to, in part, provide a better ergonomic situation for all its Production Team members. (Doc. 20-1 at 19; Doc. 20-4 at 6). Each two hour work assignment is called a rotation. (Doc. 20-4 at 6).

11

- MBUSI's Production Team Member job description requires Team Members have flexibility in moving between different job assignments and work schedules. (Doc. 20-2 at 62).

- MBUSI's Team Member Handbook states that its Team Members may be required to work daily overtime and that a reasonable amount of overtime will be assigned. (Doc. 20-7 at 28).

- MBUSI's Team Member Handbook states that a Team Member will be expected to work a reasonable amount of overtime. (Doc. 20-7 at 28).

- MBUSI's Team Members, including Plaintiff, were routinely required to and did work more than 8 hours per day and 40 hours per week. (Doc. 20-8 at 2-3; Doc. 20-9 at 2-3).

Plaintiff delivered Dr. Ross's April 26, 2012 medical excuse with the 40 hour per week restriction to the MBUSI Medical Department. (Doc. 20-1 at 27-28; Doc. 20-2 at 43). Plaintiff was told that this medical excuse was insufficient as it did not include enough information and did not say why Plaintiff could work only 40 hours per week. (Doc. 20-1 at 30; Doc. 20-6 at 8).  Plaintiff then secured an April 30, 2012 medical excuse from Dr. Ross which contained the following restrictions: "Kimberly [Plaintiff] is not to work more than 40/hours wk. She is not to do any heavy lifting, pulling or pushing due to her pregnancy."  (Doc. 20-1 at 31; Doc. 20-2 at 45; Doc. 20-3 at 3, 8, 21). In addition, Plaintiff secured another medical excuse from Dr. Maddux dated April 30,

2012, which provided in part that "no more than 40 hours a week should be expected of her due to her medical limitations." (Doc. 20-1 at 32; Doc. 20-2 at 47; Doc. 20-3 at 3, 8, 18).

Plaintiff subsequently talked with Carol Davis in the MBUSI Medical Department and Ms. Davis told Plaintiff that she had not provided sufficient information. (Doc. 20-1 at 37; Doc. 20-3 at 3, 8). Ms. Davis explained that MBUSI needed to know why Plaintiff needed the additional accommodation, what was heaving lifting, and what does the doctor require regarding pushing and pulling. (Doc. 20-6 at 7-8). Plaintiff did not provide any additional information.

(Doc. 20-1 at 41, 45).

On May 2, 2012, Plaintiff met with Jeff Burbank, MBUSI Manager for Safety, Security and Medical Services and Emerson Gore, a MBUSI Team Relations Representative. (Doc. 20-1 at 38, 41). Before this meeting Burbank had no knowledge that Plaintiff previously had filed an EEOC Charge. (Doc. 20-11 at 2). At this meeting, Plaintiff was told that MBUSI could not accommodate a restriction of a forty hour workweek, that she was placed on unpaid family medical leave, that she needed to have her doctors lift her restrictions, that she was the only one who could fix the problem and that if she did not get the restriction lifted she would be fired. (Doc. 20-1 at 39). During this meeting, Plaintiff stated that she had filed a complaint with the EEOC when she was in the Assembly Department. (Doc. 20-4 at 9).

13

Plaintiff left work and she received family medical leave paperwork from MBUSI. (Doc. 20-1 at 11, 41; Doc. 20-2 at 2-30; Doc. 20-3 at 3, 9). Plaintiff did not fill out and submit to MBUSI the family medical leave paperwork. (Doc. 20-1 at 42; Doc. 20-3 at 3-4, 9-10). Plaintiff wrote and delivered a May 10, 2012 letter to MBUSI in which she notified MBUSI that she refused family medical leave. (Doc. 20-1 at 41; Doc. 20-2 at 48; Doc. 20-3 at 3-4, 9, 23).

Mr. Burbank then sent Plaintiff a May 21, 2012 letter which included family medical leave paperwork. (Doc. 20-1 at 43; Doc. 20-2 at 52; Doc. 20-3 at 4, 9, 25). In this letter, Mr. Burbank noted that Plaintiff had presented three separate restrictions. (Doc. 20-2 at 52). First, Mr. Burbank noted that Plaintiff had received a fifteen pound lifting restriction that was indefinite in time and that this restriction immediately had been accommodated. (Doc. 20-2 at 52). Second, Mr. Burbank noted that Plaintiff had presented a work restriction of not more than forty hours of work per week during her pregnancy, that this restriction was obviously limited by the term of Plaintiff's pregnancy, that MBUSI viewed this restriction as temporary in nature, and that MBUSI was able to accommodate this restriction by providing Plaintiff family medical leave if Plaintiff would complete and submit the necessary paperwork. (Doc. 20-2 at 52). Finally, Mr. Burbank noted that Plaintiff had presented an indefinite forty hour per week work restriction without any description of the medical condition that justified that work restriction. (Doc. 20-2 at 52). Mr. Burbank explained that MBUSI could not

14

accommodate on an indefinite basis the forty hour per week restriction and suggested that MBUSI and Plaintiff engage in an expanded discussion to determine if some other type of restriction would serve the health related purpose of the forty hour per week restriction. (Doc. 20-2 at 52).

In response, Plaintiff did not complete or submit the family medical leave paperwork, she did not authorize her doctors to discuss her restrictions with MBUSI, and she did not suggest any alternative restrictions. (Doc. 20-1 at 36-38, 41-42, 45-47; Doc. 20-3 at 3-4, 9-10).

Plaintiff and MBUSI swapped additional letters. (Doc. 20-1 at 46-47, 49; Doc. 20-2 at 53-54, 56-59; Doc. 20-3 at 3-4, 9-10). By David Olive's letter dated June 20, 2012, Plaintiff was instructed to: "(1) provide to the MBUSI Medical Department the necessary paperwork and objective medical documentation previously requested, or (2) return to MBUSI with documentation releasing you to return to work at a level that allows you to perform the essential functions of your job." (Doc. 20-1 at 47; Doc. 20-2 at 56). Plaintiff did neither and on July 9, 2012, Mr. Olive sent Plaintiff a letter informing her that her employment had been terminated as she had not "provided the requested objective medical documentation nor have you returned to work in a condition which allows you to meet the essential functions of the job." (Doc. 20-1 at 47, 49; Doc. 20-2 at 17).

On May 8, 2012, Plaintiff filed EEOC Charge of Discrimination 420-201201983 in which she alleged sex and disability discrimination. (Doc. 20-1 at 56; Doc. 20-2 at 67; Doc. 25-1; Doc. 25-4). On September 7, 2012, the EEOC issued a Dismissal and Notice of Right to Sue as to that EEOC Charge. (Doc. 20-1 at 57; Doc. 20-2 at 70). On September 13, 2012, Plaintiff filed EEOC Charge of Discrimination 420-2012-01895 in which she alleged disability discrimination and retaliation. (Doc. 20-2 at 71; Doc. 25-2; Doc. 25-3). On March 25, 2013, the EEOC issued a Notice of Right to Sue as to that EEOC Charge. (Doc. 25-5).

## DISCUSSION

### A. Pregnancy Discrimination.

In order to establish a prima facie case of pregnancy discrimination, Plaintiff must show that "she suffered from a differential application of work or disciplinary rules." *Spivey v. Beverly Enters. Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999); see also *Hubbard v. Meritage Homes of Fla., Inc.*, 520 F. App'x 859, 863 (11th Cir. 2013). "Generally, when the plaintiff alleges discriminatory discipline, the plaintiff must show that the employer treated similarly situated employees not of the protected class more favorably." *Hubbard*, 520 F. App'x at 863. Plaintiff, however, does not need to "'identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her.'" *Id*. (quoting *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1321 (11th

Cir. 2000)). Finally, "if the plaintiff cannot show a non-pregnant comparator who was treated differently, she alternatively can survive summary judgment by presenting circumstantial evidence 'that creates a triable issue concerning the employer's discriminatory intent.'" *Hubbard,* 520 F. App'x at 863 (quoting *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011)).

Plaintiff has not shown any similarly situated employees, including employees with non-occupational, temporary conditions holding similar job positions who were treated differently. Instead, Plaintiff argues she can establish a prima facie case because, as a pregnant employee, she allegedly was subject to different work rules and discipline. To support this argument, Plaintiff first asserts that her forty hour workweek restriction "for her pregnancy" was not accommodated. This argument by Plaintiff fails. First, the evidence is undisputed that MBUSI offered Plaintiff family medical leave to accommodate her temporary pregnancy related restrictions. (Doc. 20-4 at 5). Second, there is no evidence that Plaintiff's indefinite restriction of no more than forty hours of work per week was related to her pregnancy. To the contrary, the undisputed evidence establishes this restriction was imposed by Dr. Maddux, of the Breast Care Center of Birmingham, a Board Certified General Surgery Fellowship Trained Breast Oncology practice. (Doc. 20-1 at 47). Thus, to the extent Plaintiff claims this indefinite restriction was not accommodated, there is no evidence that it was related to her pregnancy. Third, there is no evidence MBUSI had a policy or work rule to accommodate similarly situated

17

employees with indefinite restrictions of no more than forty hours work per week. Plaintiff's "evidence" in this respect regarding employees who worked at the warehouse is inadmissible as discussed by the court above. Regardless, Plaintiff has offered no evidence that MBUSI accommodated employees with such indefinite restrictions or that any such employees were similarly situated. *Barnette v. Fed. Exp. Corp.*, 491 F. App'x 176, 182 (11th Cir. 2012) ("A comparator must be similarly situated to the plaintiff in all relevant respects."). Finally, Plaintiff's argument that pregnancy discrimination is shown because she did not receive an accommodation also fails for the reason that the Pregnancy Discrimination Act does not require accommodation or preferential treatment. *Spivey*, 196 F.3d at 1312.

Plaintiff next asserts that she was subject to different work rules and discipline because MBUSI did not explain intermittent family medical leave to her. (Doc. 20-1 at 62; see also Pl. Br. Doc. 23 at 28). There is no evidence that MBUSI has a policy to do so or that Plaintiff was treated differently than any other non-pregnant employee. Moreover, it is undisputed that MBUSI gave Plaintiff family medical leave paperwork that covered intermittent family medical leave (Doc. 20-1 at 11; Doc. 20-2 at 2-30, 48-50, 52-53; Doc. 20-3 at 3, 9) and if Plaintiff did not understand that paperwork or that it covered her temporary restriction, that is not evidence of discriminatory intent by MBUSI. There is no evidence that this asserted failure to explain intermittent family medical leave was due to discriminatory intent.

18

Plaintiff also has not presented any circumstantial evidence "that creates a triable issue" that MBUSI acted based on discriminatory animus because of Plaintiff's pregnancy. Because plaintiff has not established a prima facie case of pregnancy discrimination defendant is entitled to judgment as a matter of law as to Count I of Plaintiff's Complaint.

Assuming that plaintiff had established a prima facie case, defendant has articulated legitimate, nondiscriminatory reasons for plaintiff's discharge and plaintiff has shown no evidence of pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). Plaintiff was instructed to supply more information about her medical restrictions and she did not. (Doc. 20-1 at 37, 41, 45; Doc. 20-3 at 3, 8; Doc. 20-6 at 7-8). Plaintiff's doctors were not permitted to discuss her restrictions with MBUSI. Plaintiff did comply with MBUSI's request that she complete family medical leave paperwork. (Doc. 20-1 at 42; Doc. 20-3 at 3-4, 910). Plaintiff was warned that she must comply with MBUSI's directions or else her employment would be terminated. (Doc. 20-2 at 52, 56; Doc. 20-3 at 4, 9-10, 25, 30). Plaintiff did not follow MBUSI's directions, as a result she was absent from work without excuse, and she was discharged. (Doc. 20-1 at 3638, 41-42, 45-47, 49; Doc. 20-2 at 56, 58). *See Willis v. Postmaster Gen.*, 300 F. App'x 748, 752 (11th Cir. 2008)(unexcused absences from work are legitimate, non-discriminatory reason for discharge); *Thomas v.*

*Miami Veterans Med. Ctr.*, 290 F. App'x 317, 320 (11th Cir. 2008) (employee's failure to

follow employer's instructions is a legitimate non-discriminatory reason for discharge).

MBUSI has articulated legitimate, nondiscriminatory reasons for its decision to

discharge Plaintiff. Plaintiff has asserted no evidence of pretext beyond what she offered

in support of her prima facie case and her claim that working overtime is not an essential

function of her job. But, as noted above, the evidence before the court establishes that

working a flexible work schedule, including more than forty hours of work per week, is

an essential function of a MBUSI Production Team Member's job. Thus, Plaintiff has

failed to show pretext, and as a result, MBUSI is entitled to judgment as a matter of law

as to Count I of Plaintiff's Complaint for this reason as well.


**B. Disability Discrimination**.[5]

To establish a prima facie case of discrimination under the ADA, a plaintiff must

show that (1) she is disabled; (2) she is a qualified individual; and (3) the defendant

unlawfully discriminated against her because of her disability. *Earl v. Mervyns, Inc.*, 207

F.3d 1361, 1365 (11th Cir. 2000). A qualified individual must show that "with or without

reasonable accommodation [she] can perform the essential functions of the employment

---

[5]In her pleadings and briefs, Plaintiff did not identify her alleged disability. At argument, Plaintiff clarified that she contends her disability is her inability to use her arm due to her prior breast cancer surgery. The court does not need to and does not address whether there was substantial evidence of this alleged medical impairment and whether this alleged impairment constituted a disability as summary judgment is due for the reasons set out herein.

position that [she] holds or desires." 42 U.S.C. § 12111(8); see also *Earl*, 207 F.3d at 1365; *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). "Thus, if [plaintiff] is unable to perform an essential function of [her] … job, even with an accommodation, [she] is, by definition, not a "qualified individual" and, therefore, not covered under the ADA." *Davis*, 205 F.3d at 1305 (emphasis added). A job duty is an "essential function" if it is one of "the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl,* 207 F.3d at 1365 (citing 29 C.F.R. §1630.2(n)(2)(i)). The ADA requires that "consideration shall be given to the employer's judgment as to what functions of a job are essential…." 42 U.S.C. § 12111(8). Therefore, "[t]he employer's judgment as to which functions are essential" is substantial "[e]vidence of whether a potential function is essential." 29 C.F.R. § 1630.2(n)(3)(i); *see also Toland v. AT&T*, 489 F. App'x 318, 319 (11th Cir. 2012) ("We give substantial weight to the employer's judgment as to what functions a position are essential.").

One of the essential functions of Plaintiff's job at MBUSI was that she work a flexible work schedule that included occasionally working more than eight hours in a day, working more than forty hours per week, and mandatory overtime. (Doc. 20-2 at 61-62; Doc. 20-4 at 9, 12; Doc. 20-6 at 7-8, 14). The MBUSI Production Team Member job description and the Team Member Handbook clearly indicate that MBUSI Team Members are required to work a flexible job schedule, including overtime. (Doc. 20-2 at 61-62; Doc. 20-7 at 27-28). Plaintiff admitted that she frequently worked overtime and

21

was paid for her overtime work. (Doc. 20-1 at 26-27, 29; Doc. 20-9 at 2-3). All MBUSI

Production Team Members regularly work a flexible work schedule, including, as needed,

more than eight hours a day, more than forty hours per week, and mandatory overtime.

(Doc. 20-2 at 61-62; Doc. 20-4 at 9, 12; Doc. 20-6 at 7-8, 14; Doc. 20-7 at 27-28; Doc.

20-8 at 2-3). The production environment at MBUSI requires that its employees work a

flexible work schedule. (Doc. 20-2 at 61-62; Doc. 20-7 at 27-28).

Plaintiff represented to MBUSI that she could not work more than forty hours per

week. However, as noted, an essential function of the job of an MBUSI Production Team

Member is to work a flexible work schedule that includes working overtime. Thus,

Plaintiff's indefinite restriction that she not work more than forty hours per week

precluded Plaintiff from performing the essential functions of her job; she is not a

qualified individual subject to the protections of the ADA and thus, she has not

established a prima facie case of discrimination under the ADA. As a result, judgment as

a matter of law is due to be granted as to Count II of Plaintiff's Complaint.[6]

In addition, as noted above, MBUSI had legitimate, nondiscriminatory reasons for

its decision to terminate Plaintiff's employment, and Plaintiff has presented no evidence

---

[6]Plaintiff cannot claim as a reasonable accommodation that she only work a
scheduled forty hours per week. Such an accommodation would be tantamount to forcing
MBUSI to eliminate an essential function of Plaintiff's job which the ADA does not require.
*Davis*, 205 F.3d at 1305 ("[i]n other words, the ADA does not require [the employer] to
eliminate an essential function of [the plaintiff's] job."), *Holbrook v. City of Alpharetta, Ga.*, 112
F.3d 1522, 1527 (11th Cir. 1997) (same).

22

of pretext. Summary judgment is due to be granted as to Count II of Plaintiff's Complaint for this reason as well.


## C. Retaliation.

A plaintiff establishes a prima facie case of retaliation by showing that: (1) she "engaged in statutorily protected conduct;" (2) she "suffered a materially adverse action;" and (3) "there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010), cert. denied, 132 S. Ct. 1795 (2012). The first element, protected conduct, has been defined by the Eleventh Circuit as opposition to "'any practice made an unlawful employment practice [under Title VII], or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Muhammad v. Audio Visual Servs. Grp.*, 380 F. App'x 864, 872 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Establishing the third element, causation, requires the plaintiff to show that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  Doing so usually requires a plaintiff to show that the protected activity and the adverse action were reasonably close in time and that the party making the decision to take the adverse action knew of the protected activity. *See Schoppman v. Univ. of S. Fla. Bd. of Trs.*, 519 F.

23

App'x 549, 553 (11th Cir. 2013) (stating that close temporal proximity could create an inference of a causal link, but not where there is unrebutted evidence that the decisionmaker did not know of the protected conduct) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

Plaintiff asserts two incidents that she contends constitute protected conduct.[7] First, Plaintiff contends she engaged in protected conduct when, in March 2012, she spoke with her Assistant Manager, Mr. Robinson. (Doc. 20-1 at 15; see also Pl. Br., Doc. 23 at 35-36). Plaintiff claimed a lack of team member and team leader support and did not complain about harassment or discrimination. (Doc. 20-1 at 15). Thus, this incident does not constitute protected conduct. *Hawk v. Atlanta Peach Movers*, 469 F. App'x 793 (11th Cir. 2012) (claim that employer acted unfairly to employee was not protected conduct as nothing in employee's expressions suggested he subjectively believed employer was discriminating against him based on a protected ground).

Next, Plaintiff contends she engaged in protected conduct when, at the May 2, 2012 meeting with Mr. Burbank and Mr. Gore, she stated she previously had filed an EEOC Charge. (Pl. Br., Doc. 23 at 35-36). Simply stating that she had filed an EEOC

---

[7]Plaintiff's Complaint originally asserted that she engaged in protected conduct in 2008 and 2009 when she filed an EEOC Charge over an incident of alleged harassment. (Doc. 1). Plaintiff has abandoned any reliance on an argument that her conduct in 2008 and 2009 constitutes the protected conduct as the basis of her claim in this case. Indeed, the lengthy intervening time period between 2008 and 2009 and the date of Plaintiff's termination in the summer of 2012, would not support a retaliation claim.

Charge in the past is not protected conduct. Plaintiff was not opposing an unlawful employment practice nor was she participating in any manner in any proceedings under Title VII.  This comment does not demonstrate a good faith belief that actual illegal conduct under Title VII is taking place. *Saffold v. Special Counsel, Inc*., 147 F. App'x 949, 951 (11th Cir. 2005).   Because Plaintiff has not established the protected conduct element of a prima facie case of retaliation, judgment as a matter of law is due to be granted as to her retaliation claim asserted in Count III of her Complaint.

Even assuming Plaintiff had presented evidence of protected activity, she has not offered evidence on which a reasonable jury could find a causal connection between the adverse action (her termination) and any protected activity.

Plaintiff has offered no evidence to show that Mr. Robinson, Mr. Burbank, or Mr. Gore were decisionmakers with respect to her termination.  There is no evidence that the decisionmaker, Mr. Olive, had any knowledge of her comments or communications with Mr. Robinson or with Mr. Burbank and Mr. Gore. *Brungart,* 231 F.3d at 799 (no causal connections when decisionmaker did not have knowledge employee engaged in protected conduct); *see also Alansari v. Tropic Star Seafood Inc*., 388 F. App'x 902, 905 (11th Cir. 2010) (same). Because plaintiff has not satisfied the causation element of her prima facie case, summary judgment is due to be granted as to Count III for this reason as well.

As discussed previously, MBUSI also has articulated legitimate, nondiscriminatory reasons for its discharge of Plaintiff, and Plaintiff has shown no evidence of pretext. For

25

this additional reason summary judgment also is due to be granted in favor of the Defendant as to Count III of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and Defendant is entitled to judgment as a matter of law. An Order granting Defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 26th day of March, 2015.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE